UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEREK HALE                                                                CIVIL ACTION

VERSUS                                                                    NO: 10-282

OMEGA PROTEIN, INC.                                                       SECTION: "A" (3)

## FINDING OF FACT AND CONCLUSIONS OF LAW

This is a civil action brought by plaintiff Derek Hale pursuant to the Jones Act and general maritime law against his former employer, defendant Omega Protein, Inc. Plaintiff seeks damages for personal injuries allegedly sustained while working as a fisherman aboard the F/V CHAUVIN. Plaintiff alleges that on September 8, 2009, while the vessel was on navigable waters, he was struck on the forearm by a piece of metal pipe during fishing operations. Plaintiff seeks recovery for arm, knee, shoulder, and back ailments that he contends are causally-related to the incident aboard the CHAUVIN.

Defendant disputes Plaintiff's contention that all of the claimed injuries are causally-related to the incident aboard the CHAUVIN.

The case was tried to the Court, sitting without a jury, on March 20-22, 2013. Having considered the testimony and evidence at trial, the depositions submitted in lieu of live testimony, the arguments of counsel, and applicable law, the Court now enters the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

1

**I.     FINDINGS OF FACT**

At all times pertinent, plaintiff Derek Hale was employed by defendant Omega Protein, Inc. as a fisherman assigned to the F/V CHAUVIN. The CHAUVIN was a menhaden fishing vessel and it utilized the purse seine fishing method. Under this method, the CHAUVIN, referred to as the "steamer," carries and deploys two purse boats, referred to as "the captain's boat" and the mate's boat," that actually perform the net retrieval operation.

On September 8, 2009, the CHAUVIN was fishing offshore in the Gulf of Mexico. Hale was assigned to the mate's boat and his job was to act as bunt pile spreader. The bunt pile spreader lays out the net as it comes into the boat or is being "pursed" so that it does not become tangled.

Hale was injured on September 8, 2009, at 8:10 a.m. when a piece of pipe or other large metal object came up on the outside of the fishing net and then fell striking Hale on his right forearm. Hale went down on one or both knees when the object struck him. The incident occurred as the net was being hoisted up from the water by the hydraulic block in the mate's boat. Hale was working with his back to the net when the object struck him on the arm. The metal object fell back into the water and was never recovered.

At the time of the incident Captain Brett Mitchell was the Omega vessel captain in charge of fishing operations on the CHAUVIN and its associated purse vessels. Mitchell was on the captain's purse boat when Hale was injured. Mitchell has been employed by Omega for nearly thirty years and has extensive experience as a menhaden fisherman, crewman, and captain. The Court found Mitchell to be a very credible witness.

Mitchell did not recall any debris being in the water during fishing operations on the morning of Hale's injury. When fishing operations first began the crewmen discovered a hole in the net near the captain's boat. The nets used in fishing operations are quite large and sometimes develop holes and tears.

Menhaden fishing operations are typically conducted one to three miles from shore because that is where the fish are located. The water depth on the day of Hale's incident was not particularly shallow for menhaden fishing operations.

Crewman Santez Peoples was operating the block on the mate's boat at the time of the incident. The person operating the block controls the speed at which the net is retrieved from the water. The person operating the block can instantly stop it at any time by pulling the appropriate control lever.

The net was not being operated at an excessive rate of speed on the day of the incident. The net speed on the day of the incident was no different than any other day and the net is operated at the same speed during retrieval whether it is empty or full. In fact, there is no advantage to pulling in the net at a high rate of speed—slow retrieval works best for fishing operations.

A weight was routinely used on the engine throttle to keep the net speed steady—to keep the throttle from vibrating back up and thereby slowing the speed down. The weight was used on the day of the incident but was not heavy enough to force the throttle down and thereby speed up the net. Moreover, the accident that Hale describes could have occurred even in the absence of excessive speed. Hale did not establish that excessive speed was a factor in causing the object to strike him on the arm.

Chester Atkinson was the mate in charge of operations on the mate's boat on the day of the incident. Atkinson witnessed the accident. He saw the object strike Hale on the arm and he believes that Hale went down on one or both knees. In his opinion the accident occurred so quickly that no one could have done anything to prevent it.

Odell Grady, Jr. was also a witness to the accident. Grady was deposed twice and his testimony was submitted in transcript and video format. The video of Grady's second deposition gives the Court serious doubts regarding this witness's credibility.

Non-animal objects can sometimes come up with the net but this is an infrequent occurrence. No witness in the case, including Captain Mitchell (30 years experience) and Chester Atkinson (53 years experience), could ever recall an incident like the one that injured Hale. No one saw the object that hit Hale before it fell.

Immediately after the incident, Hale's forearm was swollen and he was in pain. Hale was taken to shore about three hours later for medical treatment at Business Health Partners located in Sulphur, Louisiana. The sole complaints recorded on the date of the accident were pain in his arm and elbow. The x-rays taken were negative. Hale was given pain medicine by the doctor (Dr. Bonnie Drumwright) but no other treatment was provided for his arm, and he was told to follow-up with an orthopedist if there was no improvement. (Exh. 10; Hale 082).

Hale first complained of leg pain on October 5, 2009, when he returned to Business Health Partners. (Exh.10; Hale 089). The doctor ordered an MRI of the arm and an ultrasound of Hale's right leg. The MRI found abnormal signals to be consistent with muscle hematoma and probable partial muscle tear. (Exh. 11; Hale 118). The leg ultrasound was negative. (Exh. 12; Hale 126).

As of October 28, 2009, Hale was still complaining of forearm pain. Dr. Drumwright advised Hale that it could take up to seven months for all of his symptoms to resolve. (Exh. 10; Hale 096). The doctor suggested home exercises and follow-up with the primary care physician. Knee pain was not mentioned. Hale was released to return to regular duty but with the restriction of no net pulling or lifting. (Id. at 097).

On October 31, 2009, which was the end of the fishing season, Hale answered questions at a cutout interview and specifically confirmed that he only had injuries to his forearm. (Exh. 9; Hale 079).

Hale's time on the CHAUVIN after the accident was served performing light duty. Hale did not perform fisherman duties during the remainder of the 2009 season.

The menhaden fishing industry is seasonal. Omega employs menhaden fisherman only during the actual harvesting season which lasts from April through October 31st each year. Omega fires or lays off the fisherman after the fishing season ends and the fisherman will sometimes claim state unemployment benefits. Hale returned to his home in Alabama after the season ended. Hale did not claim unemployment benefits in the off season.

On November 5, 2009, Hale visited Dr. Pamela Gibbs due to continuing right forearm pain. Dr. Gibbs prescribed additional physical therapy. (Exh. 14; Hale 175). When Hale returned on November 18, 2009, he was considerably improved but not completely because Dr. Gibbs expressed concerns with releasing Hale to drive. Dr. Gibbs was of the opinion that Hale would be fit to return to full duty at the start of the next menhaden fishing season in April of the following year.

At home in Alabama, Hale sought treatment for his knee from an orthopedist, Dr. Thomas Dempsey. Dr. Dempsey ordered an MRI. The MRI showed a torn medial meniscus and partial tear of the anterior cruciate. (Exh. 17; Hale 252). Hale elected to have surgery. Dr. Dempsey performed surgery on Hale's knee on January 19, 2010, and determined that the MRI impression had not been accurate—the menisci were intact and not torn and the antierior cruciate was also intact. (Exh. 17; Hale 255). The knee did have a defect but not one that was attributable to trauma.

Hale's knee problems are not causally-related to the accident aboard the CHAUVIN. Hale's assertions during cross examination that in the months immediately following the accident he reported problems with his knee to various persons, including medical professionals, all of whom then neglected to make a record of those complaints, were not credible. Captain Mitchell specifically recalls Hale telling him prior to the accident that he had bad knees and that his knees would swell at times.  The Court credits this testimony.

Hale later sought medical treatment for shoulder, neck, and back problems from Dr. Zoran Cupic in Houston, Texas. Hale could not credibly explain how he began his association with Dr.

Cupic, who was located several states away from Hale's home in Alabama. The evidence fails to establish that the medical treatment that Dr. Cupic rendered for shoulder, neck, and back issues was causally-related to the September 8, 2009, incident. In fact, Hale had experienced back problems in the past following a motor vehicle accident.

Dr. Cupic examined Hale's forearm which remained swollen as of May 2010, when Dr. Cupic last saw Hale. Dr Cupic did not treat the forearm and could recommend no treatment for the forearm. In his opinion, the forearm swelling that Hale continued to experience as of the date of trial is permanent. Hale has reached maximum medical improvement on the forearm injury.

Omega paid for all medical treatment necessitated by the forearm injury. Omega does not owe Hale additional cure payments.

Hale has not worked since the accident. Hale did not establish that any permanent disability that he has suffered is attributable to the September 8, 2009, incident aboard the CHAUVIN. Hale suffers from high blood pressure and has experienced two strokes since the accident.

## II.     CONCLUSIONS OF LAW

The Court has subject matter over this action pursuant to 28 U.S.C. § 1333, which confers on the federal courts original jurisdiction over admiralty and maritime claims.  Venue is proper in this district and is not contested.

Hale was a Jones Act seaman employed by Omega on September 8, 2009. The CHAUVIN and its purse boats were all vessels.

Under the Jones Act Omega had the duty to provide Hale with a reasonably safe work environment. Ober v. Penrod Drilling Co., 726 F.2d 1035, 1037 (5th Cir. 1984) (citing Allen v. Seacoast Prods., Inc., 623 F.2d 355, 361 (5th Cir. 1980)). Any negligence on the part of Hale's co-workers is imputed to Omega under the doctrine of respondeat superior. See Beech v. Hercules Drilling Co., 691 F.3d 566, 571 (5th Cir. 2012).

Hale did not establish that negligence on the part of Omega or any of its employees played a role in the September 8, 2009, incident. The expert opinions offered by Captain Mitchell S. Stoller (Exh. 1-Plaintiff) do not convince the Court otherwise. Omega is not liable under the Jones Act.

The CHAUVIN and its purse boats were not unseaworthy on September 8, 2009.

Omega owes maintenance and cure only with respect to the injury to Hale's right forearm. Omega paid all past medical expenses for the forearm injury and no future medical treatment has been recommended. The swelling in Hale's right forearm is permanent and Hale has reached maximum medical improvement ("MMI") for that injury.

Hale had not reached MMI for the forearm injury on October 31, 2009, when the fishing season ended. Hale's doctors predicted in October 2009 that it could take several months for the injury to heal but that Hale would be able to return to full duty when the April 2010 fishing season started. Hale continued to receive his full wages until October 31, 2009. Omega owes Hale maintenance payments from November 1, 2009, until the start of the menhaden fishing season in April 2010, which would have been the end of Hale's convalescence period for the forearm injury.

At the time of the accident Hale was a single man living alone, rent free in his grandmother's home in Monroeville, Alabama. In January 2010, Hale's grandmother's house burned down and Hale moved to his mother's vacant home located on the same property. Hale's maintenance expenses during his convalescence for the forearm injury were approximately $300 per month for utilities and groceries. Omega owes Hale five months of maintenance payments at this rate.

Omega's failure to pay maintenance was not willful, wanton, or callous. Hale is not entitled to damages or attorney's fees for the failure to pay maintenance.

Prejudgment interest is available in admiralty cases to compensate the plaintiff for the use of funds to which he was rightfully entitled. Brister v. A.W.I., Inc., 946 F.2d 350, 362 (5th Cir. 1991) (quoting Noritake Co. v. M/V HELLENIC CHAMPION, 627 F.2d 724, 728 (5th Cir. 1980)). The

award is subject to the trial court's sound discretion. Hale is entitled to prejudgment interest at the rate of 5 percent per annum on the maintenance award from November 1, 2009, the date that the maintenance payments began to accrue, until the date of judgment. Post-judgment interest and costs are owed in accordance with the applicable statutes.

April 12, 2013

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE